The second case today is number 210003 Jathursan v. U.S. Attorney General. Mr. Rudra Kumaran, I don't know if I pronounced that close to... Yes, that's right. And you may begin when you're ready, sir. Good morning. May I please the court? My name is Vishwanathan Rudra the petitioner, Mr. Padmanathan Jathursan in this case, your honor. Our first argument is that the immigration judge legally errored by failing to consider his claim for asylum on account of his Tamil nationality and on account of his putative failed asylum seeker status. And the government's response was that this issue was not raised before the BIA. Therefore, this court does not have jurisdiction to entertain this claim. But then as I pointed out in our reply brief, that in fact, it was raised before the BIA. I cited the administrative record page number 17. This issue was raised before the BIA. So the government's argument does not hold water. Now, a similar issue was also raised in Lingeswaran's case. In Lingeswaran's case, this court... I'm sorry, a quick question. I'm just, I'm looking at the brief that you filed before the BIA about this combination claim. Yes, your honor. It says, at page 14 of the administrative record, it says, so when it comes to the term asylum seekers, I am not arguing that it falls within a particular social group. I am arguing that they will be persecuted on account of imputed political opinion. So that sounds like to me, you had a different combination, what I'll call combination claim for the board. It was asylum seekers plus imputed political opinion, not asylum seeker plus camel ethnicity or nationality. No, with all due respect, now our argument is, we are not even at the beginning of, before the immigration judge, I said that we are not arguing on a particular social group argument that returned asylum seeker constitutes a particular social group. Our argument is, your honor, that they will be persecuted on account of imputed political opinion. That is one factual predicate. And also the other factual predicate is Tamil ethnicity. So you take both together, and that's what our argument that the IJ failed to do. But interestingly, the BIA said, the BIA in its opinion said, the IJ took both into consideration. But that's not factually correct. The BIA said, we leave it aside that whether I properly argued before the BIA or not, the fact of the matter is the BIA said that the IJ took both into consideration. Let me ask you a question about that, if I may counsel, this is Judge Marcus. I think that you are right, that the IJ did not address the ethnicity of Tamil plus a failed asylum seeker. And the BIA may have misspoken when it said in its opinion, we agree with the IJ that the record evidence does not establish an objectively reasonable fear of persecution as an imputed LTTE supporter, either based on Tamil ethnicity, having sought asylum or both. Nevertheless, the BIA then reaches its own finding conclusion about that and concludes that the evidence does not establish the point that you are making. So even if we assume, for the purposes of my question, that the BIA misstated the record, when it said the IJ had reached a finding based on Tamil plus failed asylum seeker, didn't the BIA reach that directly itself as a finding of fact? And if indeed it did, you would have to show that the record compels reversal on that point. Do I have the framework right here? Yes, Your Honor. But our contention is BIA is not a fact-finding body. BIA cannot engage in fact-finding. The BIA should have remanded to the IJ to do the fact-finding. So that's what our, in response to your question, Your Honor, the BIA has no authority whatsoever to engage in fact-finding. So therefore, the case should have been remanded to the IJ, Your Honor. That's regarding the first point. Assume with me, for the purposes of my question, that that's wrong and that the BIA could find facts on its own. It could go beyond, just bear with me for a moment, just assume that. Would it have grievously misstated the record if it did make a finding of fact to the effect that Tamil plus a failed asylum seeker does not yield the likely conclusion in a pattern and practice case that there will be future persecution? Did they make a mistake in reaching that finding, looking at it, giving them the deference that we would give to the agency in fact-finding? You know, my response is, as I said earlier, Your Honor, I don't think the court can reach to that. No, I understand you're challenging the premise. Yes, Your Honor. I want you to assume, for the purposes of my question, that they could find facts. And they did find facts here. Would the evidence be so clear on the other side that it would compel reversal? No. Arguendo. As I said first, the BIA does not have authority. Arguendo. Arguendo, we say the BIA has fact-finding authority. Then, of course, the proper standard for the court to see whether there is compelling evidence. I understand that. I'm asking you to go to that question. I'm asking you to tell me, assuming arguendo, they could review the evidence and they did review the evidence, was there error in what they did? Because what they say here is, the respondent cites new articles about returning asylum seekers who were harassed, detained, or tortured upon return to Sri Lanka, referring to the respondent's brief at 6 to 8. Then they go on to write, most of the incidents reported in these articles involve people who, unlike the respondents, were formerly associated with the LTTE. Considering all of this evidence, we do not discern clear error in the immigration judge's finding that the respondent has less than a 10% chance of being prosecuted if removed to Sri Lanka. That's what they say. That's the our position is that's not correct, Your Honor, because as the UN, we put the UN interim decision, what the UN said, if anyone who is associated or who is perceived to be associated, here, even in fact, Ganga Kumar versus Hodor, this honorable court, in that case also what the court said, if an individual is associated or is perceived to be associated, and our position is, my client will be perceived to be associated, and also the fact he was accused because his brother was in the LTTE. So even if you add that test, whether he had any connection with the LTTE, my client meets that test also. So our argument would be then the court has to make a finding that's compelling evidence. Anyone who is in fact associated with the LTTE or who is perceived to associated with LTTE. That's my first argument. If the court permits, let me go to my second argument regarding the persecution by the Sri Lankan army on account of Tamil nationality, and our argument that the court, the BIA did not address that issue. The government cited the page four of the BIA opinion and said, no, the BIA addressed that issue. But if you read that page four of the opinion, that paragraph which the government cited, I don't want to read the whole thing to take the time, it's the third paragraph, that completely talks about the fear and the harm by the EPDP. Nothing is about here that talks about the harm by the Sri Lankan army. So the BIA did not address that issue. The whole paragraph pertains to the by the EPDP. So that's our first argument. The alternative argument, okay, say that they address that issue, the harm by the Sri Lankan army. Then our argument that the agency did not entertain, did not engage in context sensitive analysis. A similar argument was also raised in Lingeswaran's case. In Lingeswaran's case, in a footnote, this court said that that issue was not properly argued before the BIA, so we cannot entertain. But here also, it was not properly argued before the BIA. But our argument, Your Honor, here, this argument, the context sensitive analysis argument is an extension of the extension of the original argument, the nexus. So under the Gill versus INS, there's a second circuit case, Your Honor. The court said, if the argument can be characterized as a subsidiary argument, or as an extension of the argument, then even if it's not argued before the agency, the court can still entertain that argument. There's also another point I would like to make. The government did not object. The government did not object in their brief that it was not argued before the BIA. In that case also, our argument is that the court has jurisdiction to entertain. Then I go to the torture convention analysis, Your Honor. On the torture convention analysis, the IJ said he was not subjected to torture. The BIA said no, he was subjected to torture. The BIA contradicted the IJ. Then the BIA blamed the IJ, saying he did not engage in an analysis whether that torture was conducted with the acquiescence or with the consent of the government officer. So the BIA says the IJ did not do a good, the proper job. Having said that, then the BIA said, we affirm the IJ's decision, Your Honor. So that's our third argument. And the final argument on the pattern of practice of persecution, here also the BIA did a very, with all due respect to the BIA, it's a very clumsy job. BIA did not say whether they agree with the judge or not. But arguably... Can I ask you one question just to clarify? Judge Marcus pointed out that the BIA's reasoning on the, what we're calling the combination argument, he pointed out that that's in one sentence of the BIA opinion. Are you making an argument here that the BIA failed to give reason and consideration to the argument, and therefore the case needs to be remanded to the IJ? For the first argument regarding the consideration, as opposed to that there wasn't substantial evidence to support the decision? Oh, yes, Your Honor. Yeah, it should be sent back. But when the judge, when I was asked whether if it's supposed argument or that the BIA have properly, quote unquote, properly evaluated, then my response was not, but it is not, it will not be supported by substantial evidence, Your Honor. So regarding the, just briefly, regarding the pattern and practice of argument also, Your Honor, the IJ said he did not prove that he was individually targeted. But as I said in my brief, legally, he's not required to prove. That's what is the whole thing about pattern or practice. You don't have to prove that you are individually targeted. So IJ applied a wrong legal standard in that context also. The BIA did not say anything about it. So our contention was BIA did not address, arguing though, arguing though BIA implicitly addressed our position, the agency committed legal error by requiring him to show that he was individually targeted for to be eligible under the pattern or practice of persecution. Thank you, Your Honor. Ms. Lee? Good morning, Your Honor. Ms. Lee representing the Attorney General. Regarding the exhaustion point, as we argued in our brief, the government believes that the petitioner did not argue the claim regarding the combination of the TAML plus the failed asylum seeker argument. And so we believe that the court lacks jurisdiction to review that issue. And even if Can you just help me? Maybe I'm mixing categories. But as I read the argument before the board, it was really not a asylum seekers plus TAML ethnicity claim, combo claim. It was an asylum seeker plus political opinion claim. Am I mixing my categories? I just want to have the same claim before us that was before the BIA. Right, Your Honor. I believe that that is correct, that it was asylum seeker in the context of an imputed political opinion claim. I guess, is there a difference between the imputed political opinion aspect of this combination claim and TAML ethnicity as an aspect of this combination claim? It seems like the and then it's like plus what? And as I read the evidence before the board, it was plus imputed political opinion. And as I think I understand the argument before us, it's plus TAML ethnicity. And are those two things different? Is there a meaningful enough delta between those two things to say that the argument before the BIA is not the argument before us? There is a difference because I'm sorry, the petitioner is a TAML and he has evidence that he is a TAML from Sri Lanka. But there's a difference between that and being perceived to be a supporter of the LPTE. So he hasn't established that he's asserting that he's perceived that way. But he hasn't established that. Okay, but let's just be clear about what the argument was. As I understand it, that the argument that was made was that the combination of his TAML ethnicity, plus the fact that he's a failed asylum seeker would lead to the imputed political opinion. And that's why he would be persecuted. Is that right? Well, I think that he argued that before the IJ or the board that the combination of the TAML ethnicity as far as asylum seeker. If you look at the BIA's opinion on page two, the last paragraph, the BIA says, we agree with the immigration judge that the record evidence does not establish an objective or reasonable fear of persecution as an imputed LPTE supporter, either based on TAML ethnicity, having sought asylum, or both. So the BIA considered the combination argument looks like now the BIA was wrong, that the immigration judge made a finding on that. But it considered the argument. So it seems to me from that you can infer that the do not think that he raised the argument before the board, but the board went ahead and addressed the combination. I think we're having a technical problem. I'm having a technical problem. If you bear with me for a moment. I'm having trouble, Judge Pryor, hearing the answer by the government for the United States to your question. She's breaking up, at least on my screen. Yes, I hear that. Same. Can you try again, Ms. Lee, and see if we can hear you? Shall I stop the clock, Judge? Sure. Okay. So let me answer the question again. Okay. So I believe I was saying that we, the government believes that petitioner failed to argue that, I'm sorry, exhaust that question before the board. But the board did go ahead and considered the argument and determined that even if he had raised it, that he didn't make that argument. Make that showing. So he didn't make a showing that he has an objectively reasonable fear based on being a combination of a Tamil person plus being a returned asylum seeker plus being an imputed LTTE supporter. So the board did address that. And I believe that they made the correct determination. We could not say here that the board did not have before it and did not address the question of whether Tamil ethnicity plus being a failed asylum seeker yield a reasonable fear of persecution on it as being an imputed LTTE supporter. The board addressed that. And the board also said that the IJ addressed it as well, because they say we agree with the IJ that the record evidence doesn't establish. Judge Pryor, I just read that to you. Did the IJ ever address and conclude that Tamil ethnicity plus being a failed asylum seeker could yield in the aggregate of a reasonable fear of persecution as an imputed LTTE supporter? Because I didn't read that. I didn't see the IJ decided a whole lot of things, but I didn't read the IJ to have ever answered this question, even though the BIA said they did. Am I mistaken? Well, I believe that the IJ addressed the Tamil ethnicity. The IJ did address the fear of being a returned asylum seeker. Right. But that was a general matter. My question is a very precise one. Did the IJ address the combination of being Tamil and being a failed asylum seeker, yielding the persecution as an imputed LTTE supporter? Is it your view that the IJ answered this question? Well, Your Honor, I'm not quite sure if the IJ addressed that specific question because I don't believe that the petitioner raised it before the IJ. The BIA addressed it for some reason or another. They must have thought it was part of this record and the IJ didn't address it. Let's assume for my purposes that I am correct in the assertion. Obviously, the BIA did address it. And let's assume for the purposes of my question that the IJ did not address that precise and specific question. Then the BIA would have misstated the record in a material way. Would that require us to remand and tell them to reconsider? I don't believe so, Your Honor, because I mean, the board did address it, as you said, and considered the evidence that the IJ considered and made that determination. So I don't believe that a remand would be required on this issue. Let me ask you just to dig a little deeper into that. The answer then that you give is, even if the IJ never addressed it and never made a finding of fact of the likelihood of persecution on account of the combination of A and B, the BIA did exactly that. That would be a finding of fact. Can the BIA find facts on its own if the IJ doesn't address something? As a matter of law, can the BIA make findings of fact? No, it cannot make a finding of fact, Your Honor. Well, isn't that what they did here? It seems to me, when they say the respondent cites new articles about returning asylum seekers who were harassed, detained, or tortured upon return, then they go on, most of the incidents reported in these articles involve people who, unlike the respondents, were formerly associated with the LTTE. Considering all of this evidence, we do not discern clear errors in the immigration findings, the immigration judge's findings, that the respondent has less than a 10% chance of being persecuted. It looks to me like they wrapped themselves up in the IJ opinion. The IJ never really answered this question, and then they said there was no clear error in the IJ's ultimate determination about less than 10%. But this is the problem that I'm having. It looks to me like they made a finding of their own and then draped themselves around the IJ, who I don't think made a finding on this point. You follow what? At least this is the confusion that I'm having. How do I get around this problem without ultimately concluding that the BIA rectified the IJ's failure to address, because they addressed it themselves, and the record supports what they did. If they can't find facts, then don't I have to remand? Again, I'm really looking for your guidance here. Well, I think the facts support the agency's finding that there's not enough evidence to show that he would be prosecuted just for having applied for asylum or for being of Tamil ethnicity. So, I believe that the agency, the findings of fact here support what the board is saying here. Right, but who's making the finding of fact? The IJ never made a finding of fact on this point. So, the only finding of fact would have been made by the BIA, but you tell me the BIA is not permitted to make a finding of fact. If you accept the IJ never made a finding on this, and if you accept that the issue was before the BIA, and the BIA made a finding, but they can't make a finding, don't I have to send it back? Yes, your honor. If IJ didn't make these findings of fact, yes. All right, thanks very much. Leslie, I have a question about the record. This one sentence of analysis that the board did that says most of the incidents reported in these articles involve people who are formally associated with the LTTE, but when I looked at the evidence there, Exhibit 3 at 171 to 94 that the board cited, and let's just say assuming that the board could make a finding of fact, the incidents reported in those articles, I saw only one incident where that was true, where the victim was formally associated with the LTTE. Am I wrong about that evidence? Your honor, I would have to review those specific pages if I can't answer that specific question at this time. I can later respond to that question, but I believe that overall the evidence does show that many persons who are harmed were suspected of being LTTE supporters. As far as those specific pages, I would have to look over just to specifically answer that question. Yeah, the idea that they were suspected of being supporters though is different from whether they were actually formally associated with the organization. And the argument here is that because they're Camille and because they're asylum seekers, they will be thought to be associated with the LTTE. Am I right that that's the argument? I believe the petitioner's argument is that he will be perceived to be a supporter, but the evidence does show that there are some Camille persons who were harmed because they were suspected of being supporters of that group. But then there's also other evidence that shows that the people who were harmed were actually members, former members of that group, or they had other ties, family members who were supporters of the group, or they were politically active. So I believe that the evidence doesn't compel the conclusion that just because he is Camille that he will be persecuted and perceived to be an LTTE supporter. So, Your Honor, the government believes that the record in this case does not compel the conclusion, which is the standard of review for this case, that he established a nexus to harm based on any of his group, his groups that he's purporting, Camille race, or acuted political opinion, or membership in a particular social group of being immediate family members of his brother. So the EPDP, which demanded money from him and did harm him, they basically, the primary motive that they offered was demanding money. And as far as the Sri Lankan soldiers are concerned, they demanded cigarettes and services, and there wasn't enough showing that they were demanding these things based on the petitioner's race or any other statutorily protected grounds. So there's a failure to establish a nexus in this case. And regarding the objectively reasonable fear, the government believes that he hasn't presented enough evidence to show that he practiced a persecution claim, that the country conditions evidence in this case, as I was discussing earlier, doesn't show, doesn't compel the conclusion that he will be a LTTE supporter. And regarding the treatment of... We're having trouble hearing you again, Ms. Lee. I've given you a little extra time because of the technical difficulties, but if you would please conclude your remarks. Okay, let me, I'll try to check off my... Does that make any difference? It's more that it's cutting in. Okay. Can you hear me? Not very well. I could try maybe calling in through the phone with... Not sure if I could try doing that at this point. It seems better now. So I'll take about a minute to sum up. Okay. So going toward the pattern of practice of persecution, the evidence record doesn't hold conclusions that he established the treatment of Tamils living in northeast Sri Lanka would encounter persecution. And regarding the convention against torture claim, there's not enough individualized evidence in this case to show that he'll be singled out by the government or that the government will acquiesce to torture by any other group. So there's just not enough evidence to show that he will be targeted in that manner. The government believes that the record doesn't compel the conclusion that he established eligibility for any of the forms of protection and release that he is seeking. Thank you, Your Honor. Thank you. Roberto? Thank you, Your Honor. Just to clarify, there are two factual predicates. One is Tamil ethnicity. The other one is failed asylum seekers, but the legal ramification is different. The failed asylum seeker, we are not arguing they constitute a particular social group. We are arguing that is imputed political opinion. And contrary to the government's argument, this issue was raised before the IJ himself in the opening statement. In our opening statement, we raised this issue. So you had to take both in combination, but it doesn't matter because the BIA now has come and say, no, he did it, which he did not do it in that case, Your Honor. The other element, the court asked him about actual connection with the LTT and our position is all along actual as well as perceived connection. If you look at page number 315, the UN interim report, they're simply saying due to perceived or actual association. The same words used by this honorable court in Gagsa Kumar versus Holder, and they rely on a particular document, an Australian document, the same document was put in this case also. So whether you have actual connection or not doesn't matter that you will be perceived as an LTT member, Your Honor. So I think that's all I would like to address in my rebuttal. Unless if the court has any question, I will, I'll rest, Your Honor. Thank you very much. Thank you, Your Honor.